IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| PENNY T. WHITNEY, | ) | CIVIL ACTION NO. 9:14-1166-TMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner wherein she was denied disability

benefits. This case was referred to the undersigned for a report and recommendation pursuant to

Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on June 6, 2011, alleging

disability as of February 1, 2010 due to fibromyalgia, being a diabetic, and limited use of her right

hand. (R.pp. 145-148, 161). Plaintiff's claim was denied both initially and upon reconsideration.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on

July 26, 2012. (R.pp. 36-71). At the hearing, Plaintiff amended her alleged disability onset date to

April 1, 2011. (R.pp. 39). The ALJ thereafter denied Plaintiff's claim in a decision issued October

24, 2012. (R.pp. 19-31). The Appeals Council denied Plaintiff's request for a review of the ALJ's

decision, thereby making the determination of the ALJ the final decision of the Commissioner.



(R.pp. 1-4).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial

2



proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty-three (53) years old on her amended alleged disability onset date, has both a high school and a college degree and with past relevant work experience as a dispatch manager. (R.pp. 30, 39, 145). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of fibromyalgia, obesity, and status-post right hand burn, she nevertheless retained the residual functional capacity (RFC) to perform a restricted range of sedentary work[2], that the limitations imposed by her impairments did not preclude her from performing her past relevant work as a dispatch manager, and that she was therefore not entitled to disability benefits. (R.pp. 24, 27, 30).

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987).

[2]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating the opinion testimony of her treating physicians as to the extent of her pain and limitations, and by not finding Plaintiff to be disabled based on the testimony of the Vocational Expert. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Records)

Plaintiff's treating rheumatologist was Dr. Edwin Smith. Plaintiff made her initial visit to Dr. Smith on May 26, 2010 for an outpatient consultation, with a complaint of "all over pain", worse since having been involved in a motor vehicle accident in February 2010 (her original disability onset date). She also complained of easy fatigueability. However, on examination Dr. Smith found no weakness or numbness; her extremities had no deformities, cyanosis, edema, or varicosities; that while complaining of tenderness she had no joint swelling; and that neurologically her sensation, light touch, and DTRs[3] were all normal in both her upper and lower extremities. Notwithstanding these minimal findings, however, Dr. Smith diagnosed Plaintiff with fibromyalgia on this first visit. He also noted symptoms of depression.[4] Plaintiff was started on Lyrica. (R.pp.

---

[3]Deep Tendon Reflexes.

[4]The ALJ did not find that Plaintiff had a severe mental impairment, and Plaintiff does not appear to be contesting the ALJ's findings with respect to any alleged mental impairment. Therefore, the
(continued...)



522-525).

Plaintiff was thereafter seen by Dr. Donald Fox, her primary care physician, on June 2, 2010, where she was advised to reduce her intake of Percocet, as there was a concern that she was taking more of this drug than was prescribed. (R.p. 519). Plaintiff followed-up with another visit to Dr. Fox on June 22, 2010, at which time it was noted that she was taking Percocet three times a day for pain, in addition to some Lyrica from Dr. Smith. Dr. Fox stated that Plaintiff appeared to be depressed and was "just not motivated to get back into her work", although he also noted that Plaintiff "doesn't seem to have a limited range of motion just in casual observation with regards to her neck". (R.p. 517).

Plaintiff was again seen by Dr. Smith on December 15, 2010, where he noted that Plaintiff "continue[d] to feel poorly with migratory pain, and has stopped working". Plaintiff complained of pain in her right arm and forearm and hand pain, although there had been "no swelling, joint redness, or weakness". Plaintiff was also still complaining of easy fatigueability, as well as back, neck and general muscle pain. However, neurologically she had no weakness or numbness; her extremities displayed no cyanosis, edema or varicosities; and although Plaintiff complained of tenderness in "several muscle areas" there was no swelling noted. Her sensation to light touch was normal, and she again was found to have normal strength and DTRs in both her upper and lower extremities. (R.pp. 249-250).

On January 20, 2011, Plaintiff sustained a burn injury to her left hand, right hand, and forearm, and was treated at the Joseph M. Still Burn Center. On a review of systems dated January

---

[4](...continued)
discussion in this opinion is limited to Plaintiff's physical RFC.



26, 2011, it was noted that Plaintiff denied any recent history of dysthema, chest pain, abdominal pain, leg pain or claudication, while on examination Plaintiff was noted to be alert and conversant and in no acute distress, she had no significant edema, and her burn areas were noted to be healing nicely. A musculoskeletal examination revealed no evidence of gross boney deformities, while neurologically no obvious focal deficits were noted. (R.pp. 298-299, 309). A Functional Assessment completed by the Burn Center on January 26, 2011 found that Plaintiff was independent except for requiring some assistance since the burn injury to her right hand. (R.p. 283). Plaintiff continued to be followed at the Burn Center for this injury. (R.pp. 290-293).

On February 16, 2011, Dr. Smith noted that Plaintiff had a burn on her right hand and was struggling with range of motion in that hand. Otherwise there was no change in Plaintiff's condition. (R.pp. 236-238). Plaintiff was also seen that same day by Dr. Fox.[5] Plaintiff told Dr. Fox that she was being followed at the Burn Center, that her burn was doing "quite well", and it was noted to be healing and "progressing very nicely". He reviewed some of Plaintiff's other issues with her, specifically noting with respect to her diabetes that her "sugars are doing better", and stated that Plaintiff "looks pretty good and she seems to be in good spirits", although he did record that she continued "not to be working other than helping out by phone when needed". (R.p. 239). Plaintiff continued thereafter to be followed by both Dr. Smith and Dr. Fox, with the same general notations being reflected in the medical notes on her visits. See generally, (R.pp. 232-234, 324-325, 326-328, 330-331, 460-461, 465-466, 469-470, 471-474). Records from the Burn Center reflect that by March 9, 2011, Plaintiff was fully independent including with respect to ambulation, with her activity

---

[5]Both Dr. Smith and Dr. Fox work with MUSC Health, part of the Medical University of South Carolina.



limited only by her complaints of fibromyalgia.  (R.p. 281).

As noted, Plaintiff does not even herself now contend that she was disabled during this time period.  Therefore, in order to obtain disability benefits, she must show that her condition substantially worsened after April 1, 2011 (her new alleged disability onset date) from what it had previously been.  Orrick v Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

On July 13, 2011 (which was now after Plaintiff alleges her impairments became disabling), Dr. Smith noted that Plaintiff had had an MRI of her back which showed only mild degenerative disc disease with no nerve root compression.  (R.p. 326); see (R.p. 332).  Her examination findings were essentially unchanged from her previous examinations, and it was specifically noted that Plaintiff had "no new symptoms".  (R.pp. 326-329).  There is nothing in this medical note indicating any significant worsening of Plaintiff's condition after April 1, 2011.

On August 16, 2011, Plaintiff underwent a consultative physical examination performed by Dr. William Maguire.  In reviewing Plaintiff's medical history, Dr. Maguire noted that Plaintiff said that she had had diabetes for seven years, and that she was on insulin with poor blood sugar control.  With respect to Plaintiff's complaints of fibromyalgia, Dr. Maguire noted that Plaintiff had had "a variety of vague complaints" with respect to swelling at various times, muscles being tight, and the like, but that her history was "extremely vague and [it was] very difficult to pin her down on any sort of specific, but as said she is in a great deal of discomfort, which apparently is her main reason she cannot work".  Finally, Dr. Maguire noted that Plaintiff said that her "right hand [was] burned one year ago although curiously, there is no scar across the hand or the forearm".  He noted that Plaintiff said she had a lot of pain with her hand and forearm diffusely with decreased



grip strength.

On examination, Dr. Maguire found Plaintiff to be in no acute distress, noted that she got on and off the examination table rather slowly and walked rather slowly but did not walk with a limp, and that she talked "rather slowly and tangentially . . . .". He recorded that it was "difficult to get solid history from her", even though she was "alert, lucid, and appropriate with her responses, but once again hard to pin down specifics". It was noted she did not use a cane or a walker. Plaintiff's strength and sensation in her extremities was found to be normal except for the right grip, which seems about 3/5, the rest of her motor functions and sensory function was normal, her deep tendon reflexes seemed hypoactive bilaterally, but were symmetrical, her cerebellar function observation was normal, and her mental status seemed normal. On examination of the back, Plaintiff exhibited some tenderness across her shoulders, neck, upper back, and lower back. Examination of the right hand revealed no visible scar, which Dr. Maguire found curious since she claimed it had been burned and that was why she could not use her hand. He said there was no obvious joint deformity or swelling in her right hand, and although Plaintiff was somewhat tender, she could do rapid alternating movements although very slowly, while her grip strength on the right was 3/5 with the left being 5/5 (full). Examination of the left hand was unremarkable. Plaintiff stated she had trouble with her fine manipulations and gross manipulations as well as with making a clinched fist, but she could open her fingers all the way.

Examination further found that Plaintiff exhibited decreased range of motion in all joints and complained of pain with pretty much any movement with reduced flexation, although her elbows and wrists seemed to have normal range of motion. Plaintiff was able to tandem walk, but was not really able to do heel to toe walk or squat; she had no gait abnormality; and there were no



fasciculations or tremor or evidence of atrophy.  Dr. Maguire noted that there was a cervical spine CT scan from about a year and one half ago that was basically unremarkable, as well as a rheumatology note from earlier that year regarding her fibromyalgia with a "long templated note in the assessment as if she was stable with no changes".  Dr. Maguire assessed that Plaintiff's fibromyalgia would appear to be her major problem, with her fatigue and pain being assessed on a subjective basis.  With regard to her right hand, Dr. Maguire noted that Plaintiff's history of a burn does apparently cause her some trouble with forming a fist and with motor function in the right hand, which would limit her from carrying out occupations that require a lot of use of her right hand.  He also believed that Plaintiff was probably suffering some level of depression and anxiety, which played a role in her symptoms.  See generally, (R.pp. 311-314).

Plaintiff returned to see Dr. Fox on August 31, 2011, where she stated that she had discomfort of pretty much the whole back but particularly with respect to her low back as well as of pain throughout her chest.  Dr. Fox noted the results of her lumbar MRI, reviewed some of her medical history and her medications, noted (somewhat contradictorily) that she was not complaining of chest pain, and that her lower extremities were without edema.  (R.pp. 322-323).

Plaintiff returned to Dr. Smith on October 12, 2011, where her condition was again essentially unchanged.  Plaintiff continued to complain of muscle pain and soreness and easy fatigueability, but she had no chest pain, no shortness of breath or dyspnea on exertion, neurologically she had no weakness or numbness, her extremities displayed no cyanosis, edema or varicosities, she had a normal gait with no musculoskeletal swelling, and neurologically she continued to have normal sensation as well as normal strength and DTRs in both her upper and lower extremities.  Dr. Smith concluded that Plaintiff's fibromyalgia was "stable".  (R.pp. 320-321).



Notwithstanding these relatively modest objective findings, on November 1, 2011, Dr. Smith completed an Attending Physician Statement in which he opined that Plaintiff could only lift ten pounds occasionally, five pounds frequently, and could sit only five hours in an eight hour workday and stand or walk for two hours, although Plaintiff did not require an assistive device to ambulate even minimally in a normal work day. He further opined that Plaintiff could never climbs stairs/ladders, balance, or work with or around hazardous machinery; rarely push and pull, bend and/or stoop, reach (including overhead), or operate a motor vehicle; and could only occasionally perform gross and fine manipulation. He concluded by stating that Plaintiff would likely be absent from work more than four days per month, and that her limitations were due to an old burn to the right hand and arm and chronic pain. (R.pp. 340).

On December 5, 2011, Dr. Fox wrote a letter to Plaintiff's attorney regarding an Attending Physicians Statement that had been provided to him to fill out (the same one that had been provided to Dr. Smith), in which Dr. Fox advised Plaintiff's counsel that while there are physicians and physical therapists who are trained to assess these types of issues, he did not happen to be one of those physicians. However, Dr. Fox then went on to state that Plaintiff could "probably" lift 5 to 10 pounds, would be more comfortable sitting, and that although she did not require an assistive device to ambulate, she could sustain walking for no more than 0 to 1 hours at a time without sitting. He also believed that Plaintiff should rarely push and pull or climb stairs, was limited in her handling and finger dexterity, should never to rarely bend, stoop, or perform overhead reaching, and should avoid hazardous machinery. (R.pp. 447-448).

On February 20, 2012, Dr. Smith noted that Plaintiff's condition was essentially unchanged. (R.pp. 592-594). On July 16, 2012, Dr. Fox wrote Plaintiff's counsel another letter in

10



which he stated that Plaintiff's medical condition had not changed significantly.  With respect to the "Attending Physician's Statement" Plaintiff had brought him, he again stated, as he had before, that he did not feel appropriately trained to make such specific numerical determinations.  (R.p. 574).

## II.

### (Treating Physician Opinion)

Plaintiff initially asserts that the ALJ committed reversible error by failing to give great or even controlling weight to the opinion of her treating rheumatologist, Dr. Smith. While Plaintiff is correct that a treating physician's opinion can be entitled to "great weight", the ALJ gave Dr. Smith's Attending Physician Statement "little weight", finding that it was not supported by the medical records.  (R.p. 29).  After careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of this evidence.  Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record];  Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

In rejecting Dr. Smith's opinion that Plaintiff was as limited as he indicated in his Physician's Statement of November 1, 2011, the ALJ noted Dr. Smith's own records showing that while Dr. Smith had diagnosed Plaintiff with fibromyalgia, Plaintiff's physical examinations failed to show that she suffered from any disabling functional limitations.  (R.p. 28); see (R.pp. 236-238, 320-321, 326-329, 592-594).  Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in

11



giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes]. As previously noted, Plaintiff had all of the impairments shown in her medical records prior to her alleged disability onset date, and there is no indication in Dr. Smith's records of any significant worsening of her condition after that date. To the contrary, her examination findings after April 1, 2011 were essentially unchanged from her previous examinations, with Dr. Smith noting that her fibromyalgia was "stable". Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]. Hence, there is no evidence to show that Dr. Smith's November 2011 opinion as to the extent of Plaintiff's limitations was based on anything other than Plaintiff's own subjective statements. Cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]; see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints].

While it is true that fibromyalgia can be a disabling impairment in some circumstances, a claimant is not entitled to disability just because they suffer from fibromyalgia. Cf. Parven-McGladdery v. Commissioner, No. 02-1052, 2002 WL 31780954 (6th Cir. December 11, 2002) ["[A]lthough some people suffering from fibromyalgia may be totally disabled, most people inflicted with that disease are not disabled"], citing Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996); Vance v. Comm'r of Social Security, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ["[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ."]; Hoyd v. Astrue, No. 10-1625, 2012 WL 681577 at * 10 (S.D.Ind. Feb. 29, 2012)["[O]f course, a fibromyalgia



diagnosis does not automatically entitled an applicant to benefits. In fact, most people who have fibromyalgia are not disabled from working."]; <u>Reese v. Comm'r of Social Security</u>, No. 09-840, 2010 WL 3603613 at * 5 (S.D.Ohio Sept. 10, 2010)[Physician's opinion that fibromyalgia is usually not disabling was consistent with line of cases that indicate "most cases of fibromyalgia do not disable the individual from working."]. In this case, Dr. Smith's own medical findings on examination reflect that he found no weakness or numbness; that Plaintiff's extremities had no deformities, cyanosis, edema, or varicosities; that while complaining of tenderness she had no joint swelling; and that neurologically Plaintiff's sensation, light touch, and DTRs were all normal in both her upper and lower extremities. While fibromyalgia patients can have relatively normal objective findings and still be disabled, the consistency of the medical evidence covering the period from both before and after Plaintiff alleges she became disabled, together with the medical records reflecting "no new symptoms", that her condition was "stable", and the reported "vagueness" of her complaints and inconsistences in her reports, do not support Plaintiff's claim that her fibromyalgia had resulted in her being as physically limited as she claimed. <u>Guthrie v. Astrue</u>, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; <u>Gaskin v. Commissioner of Social Security</u>, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; <u>Trenary v. Bowen</u>, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; <u>cf</u>. <u>Boardman v. Prudential Ins. Co. of Am.</u>, 337 F.3d 9, 17 n. 5 (1st Cir. 2003) ["While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective



13

clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."]; see also Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [generally conservative treatment not consistent with allegations of disability]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) [The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

      Further, in addition to the paucity of evidence from Dr. Smith's own practice to support the degree of limitation claimed by Plaintiff and opined to by Dr. Smith in his statement of November 2011, the ALJ also cited to the contrary medical findings of Dr. Maguire, who noted not just the vagueness of Plaintiff's complaints, but that Plaintiff's strength and sensation in her extremities was normal except for the right grip, which seemed about 3/5.  Dr. Maguire further found that Plaintiff's motor functions and sensory function were normal, that she had no gait abnormality, and that there were no fasciculations or tremor or evidence of atrophy.  Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that [she] suffers from pain which precludes [her] from substantial gainful activity."].  With respect to Plaintiff's hand burn, in addition to finding that that Plaintiff had 3/5 right grip strength, Dr. Maguire found no obvious joint deformity or swelling in Plaintiff's right hand, and that she could do rapid alternating movements although very slowly.  Dr. Maguire did note that Plaintiff had some trouble making a clinched fist, but she could open her fingers all the way, all of which was noted by the ALJ in his decision, and which was accounted for by the limitation to sedentary work with no climbing or crawling and no more than frequent fine manipulation.  (R.pp. 27, 29).  See Richardson v. Perales, 402 U.S. 389, 408 (1971)  [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].



This finding was further supported by the records from the Burn Center, where Plaintiff received treatment for this condition, and whose records reflect that Plaintiff's difficulty was in fully flexing her fingers, in particular her pinky finger. (R.pp. 28, 290); see also (R.p. 281). Dr. Fox's records also did not indicate any general worsening of Plaintiff's condition after April 1, 2011, and even though Dr. Fox clearly indicated that he did not believe he was qualified to offer an assessment as to the extent of Plaintiff's limitations, the ALJ gave Plaintiff every benefit of the doubt by adopting Dr. Fox's statement that Plaintiff would be limited to bending and stooping and that she should avoid hazardous machinery. (R.p. 29). Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

After a review of the evidence, the ALJ determined that Plaintiff could perform at least sedentary work restricted to no climbing, crawling, balancing, or exposure to industrial hazards, and to no more than frequent fine manipulation. (R.p. 27). The ALJ determined that these restrictions would accommodate Plaintiff's condition consistent with the medical evidence documenting her impairments, while also giving Plaintiff every benefit of the doubt in determining an appropriate RFC. See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]. Again, there is no reversible error shown with respect to these findings, nor does the undersigned find that the ALJ committed any reversible error in his consideration of the opinion of Dr. Smith consistent with the medical evidence in the record. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Krogmeier, 294 F.3d at 1023 ["[W]hen



a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing Kasey v. Sullivan, 3F.3d 75, 79 (4th Cir. 1993).

Therefore, this claim is without merit. Gross, 785 F.2d at 1166 [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Andreolli v. Comm'r of Soc. Sec., 2008 WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["it is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled" (citing Welch v. Heckler, 808 F. 2d at 270)]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).

**III.**

**(Vocational Expert Testimony)**

Plaintiff's final claim of error is that the ALJ relied on VE testimony to determine that she could perform her past relevant work with her impairments, but that this testimony and opinion was given in response to an incomplete hypothetical.  This argument is without merit.

The record reflects that in determining whether Plaintiff could perform gainful employment with the degree of impairment set forth in the decision, the ALJ obtained testimony



from a Vocational Expert who testified that an individual of Plaintiff's age, education, and work experience could perform her past relevant work as a dispatcher with the impairments and RFC found by the ALJ. (R.p. 66). Plaintiff's claim of error is that it was improper for the ALJ to rely on the VE's testimony based on this hypothetical because it did not take into account all of Plaintiff's impairments as established by the record. However, the ALJ's hypothetical did account for all credibly established medical findings in the record as determined by the ALJ's RFC finding, which the undersigned has previously found is supported by substantial evidence.

The ALJ was not required to include limitations in his hypothetical that he did not find were warranted or shown in the evidence. <u>Lee v. Sullivan</u>, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]. Therefore, the ALJ's reliance on the VE testimony in finding that Plaintiff could perform the job identified by the VE with her limitations is not grounds for reversal of the decision. <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]; <u>Trenary</u>, 898 F.2d at 1364 [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; <u>Plummer</u>, 2011 WL 7938431, at * 5 [It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], <u>adopted by</u> 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012); <u>Cruse</u>, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]. This claim is without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.



17

1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e.,

if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this

Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock,

483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the

conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social

Security Act during the relevant time period.  Therefore, it is recommended that the decision of the

Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 9, 2015
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

